v. Landrieu Concrete and Cement Industries, LLC. Mr. Forrester. May it please the court. My name is John Forrester. I represent Landrieu Concrete and Cement Industries, known as LCCI. Your Honor, for three reasons, this court should overturn the district court's denial of my client LCCI's two motions for summary judgment and overturn the grant of Clear Blue's motion for summary judgment. Getting to the point, the first reason is that both the district court and Clear Blue totally ignored the 20 years of black-letter jurisprudence under the Products Completed Operations Hazard, which is a separate policy coverage and an exception to the exclusions, which provides coverage in this matter going back, again, Your Honor, 20 years. Alternatively, we argue that there is coverage under the auto form. And because there is coverage, my third reason is that the Clear Blue had no standards and committed bad faith in failing to meet the standards under Title 22. Your Honor, getting to my primary point, the district court completely overlooked and ignored the separate PCOH provision. Your Honor, it's construction material defects, and that's what this is, a material defect in construction. I'm going to talk about two concrete mixed cases. The courts hold that the accident occurs at the time of manifestation, i.e., discovery. Your Honor, vintage contracting case is directly on point as to the reasoning of what occurred here. The same exact defect, it's improper concrete mixture. And for determining whether there is coverage under a PCOH provision versus a work product exclusion, which is what the district court held here was applicable, you look not to when the improper materials were mixed. You look to when the defect occurred and was discovered, i.e., the cracking of the slabs. Just help me right there. With the manifestation theory cases, those, to my eyes, seem to mostly relate to timing. Did the occurrence occur within the covered period? What's your best case where that was applied as to an exclusion? They do both, Your Honor. It's certainly not— I'm just asking for your best case in the context of an exclusion. Vintage contracting states, Your Honor, and I quote, in this case it is uncontested that the alleged damage has occurred away from Dimitri's premises, the products are not still in Dimitri's physical possession, and Dimitri's work has been completed. That's timing of falling under the PCOH as well, Your Honors, because in that case it was— It's timing, though. Right. So are you saying Barry Concrete is wrong? Well, I am saying Barry Concrete is wrong. First, Barry Concrete was an autopolicy with a much different exclusion. It was not under a CGL. And this—the Vintage case specifically states that if the cracks were discovered after the work—so PCOH is all about timing. It's whether the work—it's whether the damage was during the work or whether it manifested after the work. So that's discussing the same issue, Your Honor, as to timing of falling under the PCOH provision. PCOH is all about timing. Was the work complete or not? And Clear Blue admitted in the last page of their brief that the work was complete. So once the court found that the sand was a product, we go straight to 20 years of jurisprudence. Supreme Services, as well as Vintage, both talk about the fact that if that—it's not when the mixing of the improper materials occurred. If the cracks occurred after the work was complete, there would be coverage under the PCOH. And so here, the work was complete and the product was out of the possession of R&J, Clear Blue's insured, after the—the product damaged after the work was complete. And that's been admitted. So you can't say this is a—falls under a work product exclusion, then know that the damage occurs after the work was complete, and still say it falls under the work product exclusion. Why isn't the product here, the sand, that because of the mixture, the aggregate's not going to make the concrete solidify? And so they handled and transported—your client did—that product. And that's when it was adultery. That is correct. But in Vintage, it was the same thing. Concrete transported. Your argument relies totally on Vintage. No, Your Honor. That's just the first start of the case. Then you have the—then you have the case of Rando. Rando's a great case. It reads like a law review article. It reviews all of the cases regarding PCOH and resulting damage. And what it goes into, it says, So the accident is the injury. And so you look at when it manifests, Your Honor. And that's 20 years. Then we have, after that case, we have Supreme Services from the Louisiana Supreme Court, another cracked concrete case. And what they say is under the PCOH provision, damages other than the faulty product itself at Judge Higginson, the sand, arising out of the faulty product, are covered. So we've got Vintage on concrete mixing directly on point. It's not when the mixing occurred. It's when the cracks occurred. That's what you look at to see if it falls under PCOH. Then Rando covers 20 years of every Louisiana Supreme Court case, confirming the same reasoning. And then Sonny, Supreme Services, confirms it wasn't covered there because the insured's work was constructing the slab. But because RR&J's work was preparatory to constructing the slab, the slab work was resulting damage. And so under the reasoning of 20 years of Supreme Court jurisprudence, starting from Vintage and ending in the Louisiana Supreme Court of Supreme Services, this is a covered claim under the PCOH, Your Honors. And that's why Vintage even discusses, Your Honor, this is separate from the exclusions. And what we handed to the bailiff here, and I don't know if that's available to Your Honors. But what Vintage said is the products completed operations hazard is listed on the declarations. It's separate. And it was $300,000 in that case. So what Vintage said, i.e., a reasonable reading of the policy includes product completed operations coverage. It is a separate coverage, Your Honors. Same is true here. Products completed operation on the deck page, $2 million, Your Honor. And what that covers is on the third page of the exhibit that I provided to Your Honors. And it's product completed operations hazard includes all bodily injury and property damage occurring away from the premises you own or rent and arising out of your product or your work except when the product is still in the physical possession or the work has not yet been completed. As I've already stated, Clear Blue admitted the work was completed. And we all know the product was not in the physical possession when the accident occurred, which is what 20 years of Louisiana jurisprudence required. That's what you look at in determining is it under the work product exclusion or is it under the PCOH separate coverage. And so, Your Honor, that is the coverage right there. That I could stop if I was out of time. But I'd like to go in and cover the exclusions. And there's exceptions to cover these. So the first was the auto exclusion in the CGL policy. We cited Rider v. Jones. So did Clear Blue. But in that case, the exclusion applied because it was an accident at the time of occurrence. But look to the two cases we cited after that, the Terminex case. And I quote, if the specific duty breached by the insured existed independently of the automobile, then liability does not arise even though the duty could have been performed by the use of the automobile. In Terminex, a truck delivered a piece of equipment to the job, just like R&J delivered the sand to LCCI's plant. There was a cutting torch still in the bed of the truck when it caught fire to the Terminex building. And the court said, No, that is not use under the auto exclusion because that piece of equipment could have been brought there by other means. It didn't have to have been brought there by the truck. The same exact thing is true here, Your Honors. The duty to not send sugar to LCCI's plant or sand that was mixed with sugar is an independent duty. It doesn't matter that it got brought there by an automobile. If the duty exists independently, just as Terminex says and just as Mueller says, which I'll get to, then it's not under the use exclusion. And Mueller is even better, Your Honors. It is a mobile paper shredding company, i.e., the purpose of the company is to drive somewhere to do work. Double R&J was in the business of delivering material. But even in that case, where a door on the truck itself entered an elderly lady, they said the truck was not on and it wasn't running. When the injury and accident occurred. When our accident occurred, the truck was miles away and it was weeks later. It wasn't running on the site. It didn't injure the slabs. And so it is even further attenuated than Mueller. And so if you look at the case law that interprets this use under the auto policy, it's not applicable. So based on Ryder, Terminex and Mueller, the R&J truck is even further removed from the accident and therefore it's not in use as the case law determines it. Damage did not arise out of maintenance. The district court opinion totally flips this exclusion on its head. They said it was lack of maintenance, which is reading in language opposite to the deposition definition, which is it's affirmative maintenance. So when the court read in that opposite language, it turns it on its head. There's no definition of maintenance. So we go to common usage. And no one ever walks out on a Saturday and says, I'm going to go, when they're washing their car and says, I'm going to go do some maintenance on my car. That's not common usage. Maintenance is changing the brakes, changing the tires, working on the engine. So common usage, this is not maintenance. And if you take the district court's determination to add and read in lack of language, it turns this exclusion on its head because that would mean lack of use and lack of ownership would also be excluded. So it makes no rational sense when you take that argument to its logical conclusion. So there was no maintenance. It was a lack of. And the exclusion is not for lack of maintenance. There was also a misunderstanding of the law regarding damage to property. And the court didn't, the judgment was very, somewhat confusing because they didn't rule in the product damage to property exclusion. But it does not apply because of the products completed operation hazard is the last sentence of that exclusion, which says it's covered under products completed operations hazard based on the timing of the occurrence. Also, the cases on the damage to property, if you follow the cases as well, the plain language I've just stated or the cases also do not allow this exclusion to apply because it applies and Reynolds says in only two circumstances. You either have a proprietary interest or a monetary benefit or it has to be given for use or repair. So it can't just be physical possession. That's where Clearbrew stops. It's a physical possession. That's it. It's excluded. That's not what the cases say. We cited the Reynolds case. There's property in a storage unit. And the court said that is not given. The court stated that is not, there's no proprietary interest in that property. So here, same is true. There's no proprietary interest in the sand. A very important point, which is just overlooked, LCCI didn't order the sand. We didn't pay for the sand. This person showed up, committed a tort on our property without being ordered or paid for. So there was certainly no monetary benefit or proprietary interest in property that wasn't asked to be provided and wasn't ordered or paid for. And it wasn't given for use or repair. Same argument. This was not even supposed to be delivered. So we and R&J was not given this for use or repair. Use or repair is used when a contractor is given sand or materials and they're using it to fill some property, to fill some holes, or to repair a building. Double R&J wasn't even supposed to have this sand. So they certainly weren't given it to use it for any purpose or to repair it. So this exclusion does not apply. Now, again, regardless, even if it did apply, it would only apply to the sand itself because the PCOH provision I've provided is a very clear way for separate coverage because the product was out of the possession and because the work was completed as admitted. And I only need one of those. They've already admitted the work was completed. And so that's an admission that there's coverage under the PCOH. So I don't understand why the Court never addressed it. There's two sentences in their opposition brief, which I believe is why they've avoided it, because it's a separate coverage provision. Two very concrete, though, Your Honor, you did ask. Number one, it's a one-off case. There's no other case that cites that for loss of use, period. The second, it's an auto policy, so it does not have any effect on my PCOH argument or primary argument under the CGL coverage. Also, it has much broader property damage language, which includes resulting language. So under that case, I can see the argument that because property damage included any loss of use thereof at any time resulting therefrom. Our auto policy language does not have that at any time resulting therefrom language. It's only related to damage to the property itself. So it's a different exclusion, Your Honor, not to mention the fact that it's only an auto policy and doesn't address our CGL coverage under PCOH. Now, looking at the State Farm and Fire Casualty case versus DeLatte, they said if the defendant had injured property of another person with the boat trailer, the policy would provide coverage. Here, the sand caused injury to other third parties, LCCI, who created the mixture, and then the work of the subcontractors who prepared the slab. And so under the reasoning of State Farm, there's coverage and there wouldn't be an exclusion under that issue, Your Honor. And so then we go to the completed operations exclusion, the auto. Well, it's either one of two things. It's covered under the PCOH, which I suggest is the clear, easy argument. But the completed operations, the auto, is almost the opposite of the products completed operations in the CGL. So it would be covered under the PCOH or excluded under the auto policy under completed operations. But if it's not operations or worker property, then it's not excluded under the completed operations of the auto policy. And so I don't need to keep getting into the auto policy, but if this Court determines it isn't worker product, then it's not going to be excluded under the policy. If it is worker product, as the lower court determined, then it falls easily under the products completed operation for the CGL policy going back 20 years. Your Honor, as to bad faith, I see my time is up. Thank you. I will defer to the brief. Thank you. Good morning, Your Honors. Fred Fondren for Appellee Clear Blue. The judgment of the district court should be affirmed. First, no material issues of fact brought up. This is a straight-up interpretation of an insurance policy based on facts where there is no significant disagreement. The difficulty with the appellant's argument is that they conflate the timing of the occurrence with the legal cause of that occurrence. But the exclusions apply to the cause of the occurrence, not the timing of it. That's what I thought Rando said. Yes, sir, it does. But I don't remember you speaking in your brief to Vintage. In fact, both Rando and . . . Rando says specifically . . . No, I know what Rando says. Okay. But since you didn't have a chance in your . . . well, you didn't in your brief. So Vintage . . . first, I will point out, very importantly, Vintage does not involve a trucking case. Why is that important? The products completed operations hazard, a copy of which the appellant just gave to you, necessary to read the whole thing. Products completed operations hazard, it says in paragraph A, includes bodily injury and proper damage occurring away from premises you own or rent and arising out of your product or your work. So it only applies to the exceptions or the exclusions of your product and your work. That's one thing. Secondarily, does not include bodily injury or property damage arising out of, number one, the transportation of property. That's exactly what this case is. Transportation of property is the only thing that RR&J did. That's established by the record. That's stipulated. And why is the exception written like that? Because in the commercial general liability policy as a whole, there is no coverage for incidents arising out of the ownership, maintenance, or use of an auto. So it makes sense that the PCOH is written that way. Does not apply to cases involving arising out of transportation of property. By the way, if this case doesn't arise out of transportation of property, the legal cause requirement of Carter and Ryder won't be met because transportation of property is the only thing that RR&J did. So if that's not the legal cause of any damage, there can be no liability by RR&J and therefore no liability for Clear Blue for them under that policy. Did I answer your question, Your Honor? Okay. As Your Honor pointed out, the Rando case makes it clear that whether or not an exception applies is a wholly separate inquiry as to whether or not there's coverage in the first place. Nobody on Clear Blue's side ever disputed that there was an occurrence. But that occurrence resulted out of the conduct of RR&J. What was that conduct? The district court clearly concluded, for obvious reasons, the only thing that RR&J did was pick up sand in a dirty trailer that still had sugar in it, transport that sand to LCCI's St. Rose facility, which was under the record at the deposition of Mr. Ramsarup, the owner of RR&J, 50 miles away. So it wasn't a case where something was simply being safeguarded. It was being transported for 50 miles, and dump it there. That's the only thing they did. They didn't mix concrete, finish concrete, didn't have any further connection with the project. And yet they do have air custody and control, undisputedly? Clearly. In fact, this is on page in the record. I'm sorry, record pages 804 and 805, deposition of Ramsarup, page 48 and 49. The president of RR&J said that the sand was in their exclusive possession and control from the time they picked it up until the time they dumped it. Nobody else had anything to do with it. Now, the cases cited about care, custody, and control, I'd like to address that. First, in the context of the auto policy and the Barry concrete case. Barry involved two opinions, as the court is probably aware, and the district court corrected itself in the second opinion, concentrating not on all the arguments of care, custody, and control, as per Reynolds and all of these, which I think don't make any difference. But the care, custody, and control provision under the auto policy is much broader than that than under the GL policy because of the word transported. And the court in Barry said it was clear that that sand was transported by the trucking company. There is absolutely no dispute as to that here. And that's where the damage to that sand, making it useless, i.e. loss of use, not fit for its intended use, occurred. And that's what's important about the Barry case. We can get into care, custody, or control. I would submit to the court that all of the cases that are string-sided, both in the Reynolds opinion and that are discussed in that line of cases, it's made clear. In these cases, the insured's actual physical possession of or control over the property determined whether the exclusion applied. The only property that RR&J ever possessed was this sand. This policy insures RR&J for commercial general liability and auto liability. It does not insure LCCI's customers' work sites. That's not what this policy does. And if RR&J's involvement was not the legal cause of those damages, there can be no liability. If it was the legal cause, then that legal cause arose out of the transport of sand. It had to because that's the only thing that they did. I'd like to address also. Well, is it fair to say they contaminated something? Yes, Your Honor. There is no disagreement. In fact, Mr. Ramesh Ramsarup, owner of RR&J, agreed and even fired his driver for failure to clean sugar from a previous load out of the dump trailer that they then loaded sand into and transported it to LCCI, making the concrete brittle and thereafter it cracked, which is actually the exact same thing that happened in the Barry concrete case. I was honestly astonished that there was another reported case on that when I first saw it, but that's exactly what happened. The sand used to make the concrete was contaminated. As a result of DRJ's not cleaning out their trailer and transporting the sand with the sugar and then dumping it into LCCI's sand bin. Did I answer your question? Okay. I'd like to address also the Reynolds case and the line of cases after that on the care, custody, and control issue. I think the care, custody, and control in that circumstance has been taken a little too far out of context of what Reynolds actually says. What Reynolds says is that the most two common scenarios where this comes up is either a contractor or someone has actual physical possession of property or in another situation where that person has ownership and or a significant pecuniary interest in that property. Reynolds is not a case that limited the use of this exclusion. It tried to find another reason where it could be applied because it always applies in the context of someone being in actual possession of property. And there's no reason to suppose that under the policy that property has to be owned by any particular person. The policy does not say that. The policy does not refer to ownership of the property that is under the care, custody, and control of the insured at all. It's just that that property, whatever it is, is under the care, custody, and control of the insured. And that's not even in dispute. Mr. Ramsurup stipulated to that. I would like to also address the Terminix case and counsel's argument on that. The Terminix case is distinguishable because the ruling was not based upon whether or not the acetylene tanks could have been brought to the facility by other means. What the case turned on was the fact that the tanks did not need to be on the truck in order to be used for welding or cutting with a torch to be done. The transportation function of the truck had nothing to do with the use of those tanks. That's why Terminix was decided like it was. And the same thing, the exact same thing is true for the paper shredder case. And forgive me, I forget the name of it, but the court knows what the truck was not on. The transportation function of the truck had absolutely nothing to do with the shredding of paper while a truck is off and parked. And that is exactly why the case went like it did because the transportation function of the truck was separated from the shredding. It was not critical to it. It did not satisfy the carter or rider tests. Here the district court found for a number of reasons that that test was satisfied. It was obvious. The insured owner, Mr. Ramsarup, admitted in his deposition, which is in the record, that the use of the truck and trailer was essential to their job of transporting sand. There's no other way to do it. Are they going to carry a bucket of sand for 50 miles, keep doing it? That's nonsense. It is a dump truck. That's how sand, a dump trailer, that's how sand is carried. He stipulated to that. I'd also like to address the issue raised in the briefs regarding the argument that the sand was not damaged because nobody could prove that it was damaged on a molecular level. I don't know how to address that really except to say that, number one, that's not required under the policy. It also, the definition of loss of use is much broader than that. It means that the product is damaged, contaminated, whatever. It is made not fit for its intended use. That's what happened to the sand. Secondarily, when we interpret insurance policies, as the court knows, we are to use language, words in their ordinary accepted meanings. When we talk about sand, I can't remember any instance where I've ever spoken about an individual grain of sand. When you go to the beach, you say, oh, look how nice, how pretty the sand is. Not the sands.  It's something that's spoken about in a plurality, in the aggregate, like water or grass or hair. That's the common usage of sand. By the way, the product being sold was not 3 trillion grains of sand. The product being transported was 28.13 tons of sand. It was a load of sand that was transported. That's the property that was transported. And the argument about, well, they delivered it by mistake, also irrelevant under the policy. The fact that they delivered it by mistake has nothing to do with whether that was property that was damaged and that property was under the care, custody, control of the insurer, that that property was transported by the insurer. There's no ownership, contract, or anything required by that part of the policy. Thank you. One further comment. The damage to property exclusion in the CGL policy, J4, personal property in the care, custody, or control of the insured, clearly applies, and that is independent of the your product and your work exclusions. And there's no reason to suppose that that does not apply, even if the court would have determined that the PCOH does apply. The PCOH has a separate limit, but it is part of the commercial general liability policy. The reason it has a separate limit is because those coverages are often deleted from policies. They can have different limits. The insured can buy, you know, have a lower premium and have a lesser limit for that, have a higher limit and have a higher premium, and sometimes they waive that coverage or delete it altogether. That's why there's a separate limit. But there's no reason to suppose by any language in the policy that the general exclusions for general liability do not apply to those coverages, particularly when the PCOH excludes itself, its whole application, when it involves, when the hazard involves transportation of property, which this case clearly does, and secondarily, when it only addresses bodily injury and property damage arising out of, quote, your product and your work, which are defined terms under the policy. If it does not involve your product or your work, the PCOH does not apply at all, and it certainly doesn't apply in a case involving transportation in any case, whether it involves your work or your property. If it involves transportation, by its own terms, it's not applicable. With that, Your Honors, if you have any questions, I'll be happy to answer them, but otherwise I will waive the remaining balance of my time. Thank you. Your Honors, I ask that you do go back and look at the Vintage case in regards to coverage, Supreme Services, as well as Rando for the reasoning that the PCOH does specifically apply in this case. It is its own separate coverage per Vintage. It's got its separate policy limits and its separate provisions providing coverage. It clearly falls under A1, the products, or outside of the physical possession when the occurrence occurs. That's what 20 years of case law says. Clear Blue has been quite creative. They don't think they have to prove actual damage when that's what the policy that they wrote explicitly says. It talks about transportation and property. Yes, Your Honor. And what it doesn't say is including loading and unloading as it does elsewhere and could have included in this section. And Clear Blue has told you in his brief that the damage arose specifically out of the loading. That language, which is in the policy elsewhere, is not here. The movement of the sand had nothing to do with the improper mixture. That's from Clear Blue. It's the actual loading. And that language is not in this exception to this exclusion. So we have coverage under A1-2. Now, Your Honors, we didn't write the policy. And we're fighting this in COVID cases right now where people are trying to say that this bacteria, this infection on property is damage. And the courts are saying, no, no, no. You have to prove that's actual damage. You can't just say, I think it's damage. That's their burden. We depose the representative of Clear Blue who acknowledged there was no damage or loss of use of the sand. That's what the policy says. So they may stand up here, and their brief was very colorful about how it's a ridiculous argument. But that's their burden. And that's their language that they wrote, not ours. So if there's ambiguity, that is to be construed against Clear Blue and not our client. That's what Blackletter case law says as well. Did Judge Guidry have a summary judgment hearing? No. So we asked for oral argument. I thought it would be very helpful to explain this here because the district court overlooked the PCOH provision, didn't even mention his ruling on the separate auto policy, but it was denied, and summarily we're here with a difficult judgment. So I asked for it. It was granted, and then the ruling came before I was allowed to argue, before we were allowed to argue. And so our brief, it's 55 pages because it's three motions for summary judgment on two policies. And so it had to be lengthy to cover all the exclusions. So I defer to our brief. We didn't get to talk much about bad faith, but on that, there's clearly coverage under the PCOH. And then again, because there's coverage, the bad faith is a few very simple things. They didn't investigate properly before they denied the claim. When I deposed the Clear Blue representative, he didn't even know about $200,000 of the $450,000 claim. Didn't even know about half of the claim, and it was denied. In 21 years, he admitted he has never denied a claim and then sought help from the court through a declaratory judgment, never in 21 years. They didn't have their own procedures. They didn't follow industry standards. I ask that you read Lufe's expert report. Your honors obviously are here to interpret the law, but he was a claims rep, very high up for many, many years, and his testimony is invaluable with that respect for some guidance. They didn't know the law in Louisiana about occurrences. They is the Clear Blue rep. Didn't know the bad faith law and what was required. Didn't know when a manifestation occurred under the 20 years of cases, which discussed the reasoning that constrict mixture that is improper, it's irrelevant of when it was mixed. It's when the crack occurred. They didn't know that, your honors. And so because we find clear coverage under the PCOH provision, and because they did not make payment timely, and the cases we cited show that their misinterpretation is on them, that is a bad faith consideration. So when they deny a claim, when they have almost little to no experience regarding construction material defect cases, don't know the law, and then they deny the claim, the cases we cite say that is imputed against them in bad faith. So on top of not doing any investigation, not even being aware of half of the claim, not knowing Louisiana law, not having their own claim guidelines, and not following industry standards, not only is there coverage, there is bad faith, your honors. And we ask that you grant our motion for summary judgment, deny Clear Blues. Thank you for your time. Thank you, counsel.